It pleases the court. Good morning, your honors. My name is Andrew Coombs. I'm here with Annie Wang from my office, and we represent Plaintiff and Appellant Adobe Systems. We are here on cross motions on an appeal from cross motions for summary judgment, which turn on the application of the copyright first sale defense to software licensed by Adobe subject to restrictions, which satisfy the tests laid out by this court. But we don't know that. We don't know it, your honor, because we did not get to it because of preliminary procedural errors in the court below, which is the subject matter of this appeal. I mean, my point is that we can't assume it. It's sort of at the center of the case, whether it is or isn't. Correct, your honor. It's Adobe's contention that this software satisfies those tests. It was recently held by this court in Adobe v. Cornrump that the OEM software, the original equipment manufacturer software, which is bundled with hardware and to be redistributed only with that hardware, does in fact satisfy the Verner test. The court made two prejudicial errors, which prevented it from arriving at this issue and making a conclusion on a substantive application of the defense. It rewarded the defendants for their failure to conduct any discovery and then imposed a burden of proof on Adobe that properly lay on defendants and then compounded that error by excluding a wide array of evidence offered by Adobe on the subject of these licensing terms for purposes of showing that the software in question. It's a very odd copyright case where we don't have the copyright information. So there seems to be no dispute that Adobe didn't disclose the license agreements in its initial and mandatory disclosures. Is that true? It is not identified in the initial disclosures. Okay. And so what is the precise wrong on the part of the district court when you didn't turn over what would be a fundamental basic document in a software licensing copyright dispute? There are two issues, Your Honor. The first issue is that it was not Adobe's burden to adduce that evidence in the first place because the burden rested on the defendants. But to go more directly to your... So when you have a mandatory disclosure, you don't have any duty to turn over what you have? Well, we did turn over the license agreement in question. Well, you mean just a matrix or just a model, right? That's correct, Your Honor. You didn't turn over the agreement at issue in the case. And the reason we didn't, Your Honor, is because we didn't know what agreement was at issue in the case because the defendants did not establish their initial burden to tell us what license agreements were at issue, what first sale they were relying on. But they did produce their initial disclosures, right? And they did tell you what kind of software it was and who they got it from. Your Honor, that was incomplete, and it was a rolling disclosure, much of which continued until after the summary judgment motions were filed. I thought before the summary judgment motions were filed. And they showed who they... Wait a minute. I'm sorry. It's difficult to get one's hands on the facts here because, to be frank, the degree of venom and finger pointing is really somewhat beyond the pale. And it makes it very difficult for us to understand what's actually happened because everybody's saying that everybody else is lying but not particularly telling us what the truth is. So to be clear, before the summary, I believe, but I need to verify that before the summary judgment motions were due, they had disclosed who they bought the software from and what kind of software it was. Is that true or not? Not completely. But even those disclosures did not go back to a lawful acquisition, which is their burden. That first... Well, that's the question, not the answer. But in terms of whether you could have produced licenses for the ones that were at issue, you could have. No, Your Honor, because it was not a sufficient disclosure for us to know which licenses were at issue. There were... Adobe has literally thousands of licenses around the world in different distribution channels for different software during different time frames that were at issue in this litigation. And none of the information disclosed by defendants was sufficient for Adobe to identify which license agreements it should have produced, which comes back to the issue about the failure to disclose. It was substantially justified, as stated in the pertinent rules, because Adobe did not know what license agreements were placed at issue by the defendant's allegation of the first sale defense. Well, did you find out at some point? No, Your Honor. You never found out what license? And this is... Well, if you don't know, how do you expect the other side to know? The other side is the side that has the relationships with its sources. Not what the original purchaser or licensee. No, but we have... That's where you have the relationship. We have the relationships with the initial licensees, but until we... And that's the license agreement that's at issue, isn't it? No, it is the one that's at issue, but we don't know which one is at issue until the defendants tell us how it got back to that first sale. Adobe has thousands of first sales. I know that. I'm sorry, they have no sales. They have thousands of licenses. But the other party knows even less about it than you do. I mean, obviously, you're the party to the sales. But... Or their license agreement. Defendants are parties to their sourcing, which tracks it back to the relevant first sale. Okay, let's get down to basics. We were talking. If it's a license, Adobe licenses to X, and then X either sublicenses or sells or does something to the Christiansen here. And you're saying they have to tell you who X is. Your Honor, I think the point is that the chain of title here is more complicated than the question suggests. The names that were disclosed are still entities unknown to Adobe. They were not sufficient for Adobe to identify which of those first transactions... Did you propose or proffer discovery to the people who were disclosed as being their sources? I'm sorry, Your Honor. Did you make any discovery inquiry of the people who were disclosed as being their sources? We did try. But, Your Honor, this is a gray market. And the degree of cooperation and the extent to which we were able to secure additional information was extremely limited. And, again... Did you put deposition notices out to people who were identified? We sent subpoenas just to take them out. Okay. And those were not responded to? They were either not responded to or they were responded to incompletely. Or we couldn't find the people who were questioned. But to the extent... You know, that's the problem with this case. There's a lot of this going on. And we have to kind of figure it out, okay? So those entities or individuals to whom you issued subpoenas who did not respond, did you go to the court for enforcement? Well, Your Honor, there was... If we were unable to serve a subpoena, there was... Well, that's a different issue. That's one issue. And, no, Your Honor, we didn't. We were busy fighting a preliminary issue that itself wasn't resolved until after the discovery cutoff as it related to the sales records with Google. Well, one of the things that I understood from your argument is even if you set aside the initial disclosure that there was sufficient documentation in your summary judgment motion, some of which relied on documents produced by the other side. Am I correct about that? You're correct, Your Honor. And that's the second reason... What I couldn't figure out from your briefs is tell me which documents in the summary judgment that you think were actually produced that the district court should have focused on in order to rule on the summary judgment. Can you give me a docket number or an ER number? Just a moment, Your Honor. As you know, it's an extensive docket. But just in terms of the character of the documents, there's largely two. The first is that in Christensen's own disclosures were printouts from the Adobe website which identified some of the relevant license agreements that contain these restrictions. But what's very odd is I looked at your submissions to the district court and you never pointed to that document. I'm asking now, okay. If you can't tell me now and you've been in this litigation for all this time, it's surely no mystery why the district court couldn't figure it out either. Your Honor, there are printouts from the defendant's website at er133. Go ahead and let me answer the question. ER133 to 135. All right. And 1464 to 1472. And those are printouts of what? Those are printouts from the Adobe website which identify license agreements that contain the restrictions that were being asserted by Adobe. Right, but what's the difference between that and a pro forma agreement? Is it your position that Adobe has never sold any software ever? No, Your Honor, but it has never sold any OEM or academic software which is what the defendants concede they distributed or purported to sell in this case. But I think the most important evidence on the subject of the licensing restrictions isn't documentary because, as I've said before, we did not know what license agreements we should be advancing to the court to demonstrate the pertinent OEM or academic restrictions. But what we did have was fully disclosed testimony by web declaration from Adobe witnesses. I'm sorry, an Adobe witness. But it's all totally conclusory, right? It says these are licenses. So whether they're licenses or not licenses is a legal conclusion based on particular provisions. It's a statement of company policy. Right, a desire that they be licenses. Whether they're actually licenses is, I mean, I gather that the police did, their position was that they weren't licenses, right? That was their legal position. A legal position unsupported by any evidence introduced in opposition to Adobe's motion. But you don't have any evidence either. So they're saying they're not licenses. You're saying they are licenses. And how are we supposed to do anything with that? Respectfully, Your Honor, we did have evidence. It was excluded by the court. And that's part of the issue that's before you. But that's why Judge McKeon was asking what the evidence was. And the evidence seems to be a heavily redacted form license. And these printouts from the website, which, as I say, I did not see you mention to the district judge. Your Honor, they were in the record, and I believe they were. But that's not how we do summary judgment. Well, and I believe they were identified in the separate statement in terms of the supporting propositions in support of the motion for summary judgment. But, again, coming to the question of what. No, that's not what I'm asking. But when you were having a dispute as to what should be stricken or not stricken, you never pointed to this evidence. Your Honor, when we were arguing about what was stricken or not stricken, it was largely in connection with a motion to preclude, which was solely addressed to that template license agreement that had not been disclosed but was produced. I wasn't talking about – first of all, I don't think that's true. But second of all, I wasn't talking about that dispute. I was talking about the motion to strike, which was a different document, a different dispute before the district court, not the magistrate judge. Your Honor, I think we addressed it as part of a collective issue. We didn't single out particular documents because we felt that the underlying proposition – But you didn't say that we should be allowed to admit this evidence because it's not within the preclusion order. You never said that. Your Honor, I can't tell you the answer to that as I stand here. Well, you didn't. However, there were – as I indicated, there was a wide array of evidence that was offered on the motion for summary judgment and improperly excluded. The only argument in support of exclusion was – But am I correct that the only two that arguably actually had the terms of any license were these printouts from the website and the document, the redacted document? No, Your Honor. The other documents that evidenced the existence of restrictions – they did not detail the restrictions, but they were clearly known to the defendants based on their testimony – were the business records of the defendants, including invoices from their suppliers saying that these are OEM or academic software. So there is other documentary evidence that was introduced that was produced by the defendants and clearly no basis for excluding it in the court below in considering the motion for summary judgment. And would all that get us to the point that it's just a toss-up in the air at this point and then there's a factual issue? Your Honor, it's our position first that the burden of proof should have been on the defendants. You're asking Adobe about evidence it induced or attempted to compel. Well, why don't you answer my question first. Do you think at this stage, with all the murkiness and the chain that you've just described, you think there's a factual issue as to whether or not there's a license? Well, we don't – we think there's a factual issue as the alternative. I mean, the worst-case scenario from our standpoint is that there was a factual issue that should have been considered in light of the documentation and testimony that was introduced below and it should be remanded for reconsideration based on the evidence that was excluded in part. However, because the burden of proof lay on the plaintiff – I'm sorry, on the defendants in this case for reasons that we've outlined in the brief. Well, I mean, that's sort of the hard and interesting legal question. And the question is how – what does Foreman actually say – and we're not bound by Foreman anyway, but to the degree it's informative, it doesn't – it seems to me, yes, to say that mere possession is not enough, but if they come forward with evidence that they bought it legally in the sense that they didn't steal it and it was legitimate software, the district court viewed at that point said the burden shifted. Why isn't that right? The burden improperly shifted because the court said that Adobe had admitted lawful acquisition by Christensen, which is clearly not the case. I mean, right. I mean, that's kind of the sub-Rosa thing that nobody quite mentioned. So does lawful mean lawful in the sense of in accordance with the license or does it mean lawful in the sort of criminal law sense, nobody stole it? No, lawful acquisition in the context of whether or not there was a sale is whether or not there was a transaction pursuant to which title transferred. And if you read Foreman, what Foreman said – and of course, this is under the 1909 Act, which is a different standard anyway. It said that the defendant – and this is reversing the district court order, which was the subject of the congressional comment – is that the defendants must show authorization from the copyright owner, which the district court found was not the case as to Christensen, or title acquired through a first sale. And the defendants did not show that title acquired through a first sale. They showed the – But then there's another sentence after that, which says that in various circumstances the burden would shift, and one of them as if there was a lawful acquisition. But the lawful acquisition, we contend, must be the transfer of title because that would then show that it was acquired through a first sale. That was not shown by the defendants here, nor was it admitted by the defense. Just understand, your position is as the copyright holder of this particular software that you simply have to put forward that you are – 1976 and forward, and they are selling the software legally. And then at that point they have the first sale defense, and the burden then shifts to them. Is that your understanding? That's correct. And there are important reasons for that because this would expand the scope of inquiry for the courts immeasurably. Adobe would be in a position – every copyright claim, every time somebody used the word first sale in an answer would then be obligated to open up their entire record of all of these confidential transactions because the defendants haven't pinpointed the ones that are specifically at issue. Okay. So you've used up your time. We'll give you a short amount for rebuttal. Thank you, Your Honor. Good morning. May it please the Court, I'm Lisa Rasmussen, and I represent Josh Christensen and Software Surplus, Inc. I am a little surprised at some of the things that counsel has represented because I think – I believe that the district court below firmly held that it was undisputed that it was a lawful sale from the people who acquired the software from Adobe and then sold it to my clients. Well, it depends what lawful means, right? Well, they had a bill of sale and they sold it and they never – Well, you didn't steal it. I understand that. Right. But that doesn't mean you have a right to use it, I mean. There was no indication to my client that he was purchasing anything other than authorized, licensed versions of Adobe that had their own codes, just like anyone, just like we would go to OfficeMax today and purchase a copy of Adobe. It would have an activation code on it. Well, you agree with the basic rule that a seller can't convey more than he owns. Do you agree with that? Absolutely. All right, so you had some obligation to inquire, given the industry practice apparently, what exactly your client was buying? Right. Did you make an inquiry? Well, what my client purchased and what he purchased were the software along with the activation codes. That's exactly what he was buying. The question is, did he inquire? Well, you know, do you have the right to sell? So are you just a licensee? I mean, in other words, Mr. Coombs made the statement, you know, I think it's virtually common knowledge that Adobe never sells OEM academic software. Right. Everybody knows that, presumably including your client who was in that business. Well, actually, I don't think that there's any indication that my client knew that, and they were authorized OEM versions. Well, he made no inquiry. Well, he made the inquiry according to what he had been doing for years. Well, are you saying because he didn't inquire, he can purchase more than the seller owned? No, I'm not suggesting, Your Honor, that he could ever sell or purchase more than the seller owned. I'm not suggesting that at all. Well, then what is he buying? In that case, it doesn't make any difference, you know, what the seller, what he thought he bought or what the seller told him, right? The facts of this case and what came out during my client's deposition and what is in evidence in this case is that in 2005, Adobe contacted my client and asked about his website advertisements and the products he was selling, and they said that's fine as long as you have the proper activation codes, and Adobe was fine with it. So that is in evidence in this case. Well, he might have bought a pick and a poke. I mean, I don't know. So if he goes on the streets of New York and somebody is selling this OEM educational software and he buys it and resells it, that's okay in your view? Because the guy sold it to him. Is that okay? No, I think it's okay because the people that he purchased it from are people who had acquired it directly from Adobe. Well, how do you know that? I mean, the whole issue here in a way is a chain of custody issue. So when you, you're telling me that it's not okay if he just buys it off the street in New York. So what's the difference between that and what your client did? Because my client knew that it came directly from Adobe. And how did your client know that? He knew that by talking to the people he purchased it from. And that's all you have to do is say, I can just say to the guy in New York, where did you get this stuff? He says, well, I got it from Adobe. It's Adobe software. Okay, thank you. I'll take the first 50 you have here. So, again, I don't see a lot of difference between your client and somebody buying it off the street. I understand the question. I think it goes back to the inquiry that Adobe made with him back in 2005. And also when the discovery started, we disclosed, fully disclosed, all the invoices from the purchases that he had made from various people that came directly from Adobe to these various providers to my client. That was all disclosed to Adobe. And Adobe has never alleged that it didn't know who these people were. But isn't, I mean, what we're dealing with here is a procedural problem, not a substantive problem. I understand. I mean, your position, I assume that ultimately, if it turns out, if this discovery hadn't gotten so incredibly mucked up here, and there were, on both sides, frankly. And there was, there were licenses in evidence, and it turned out that looking at those evidence and applying our standards, they were, in fact, licenses and not sales, then you would lose. Yes. So it really doesn't have anything to do with a guy in the street in New York. It's all a discovery problem, i.e., or where's the burden of demonstration? Well, it does in the sense of where did the guy in the street in New York get him. Well, right, exactly. So let's get back to what was disclosed. Adobe says, look, we can't trace the chain of title because they're not telling us the, you know, in terms of where they got it, who all of the sellers were, so we could trace it back. So what is your response to that? My response to that is it was disclosed to Adobe exactly where Mr. Christensen purchased them from. And Adobe has had every opportunity to even call those people up and say, and Adobe knows who it distributes to. I think this goes back to the problem of placing a burden on Mr. Christensen to put into evidence facts that he couldn't possibly have that are all within the knowledge. But how do you do it if you're buying on the gray market? And I'm just saying not that he was. I'm saying if one were to purchase on the gray market, basically your position would be all I have to do is buy it. I need to tell you who I got it from. My concern with that is doesn't that really circumvent the requirements of 109, which means you have to be an owner, not just a possessor? Right, but in this case he said, here's exactly where I got it. That was all disclosed well before the close of discovery. But who has the burden when you're making the first sale defense, who has the burden to show ownership of the software? Well, I think what the case law establishes is that once Mr. Christensen has established that there was a lawful acquisition, in other words, that he didn't buy it unlawfully or he didn't obtain it unlawfully, he believed, well, why wouldn't he obtain it unlawfully if the person, I mean, that's a question of how you define unlawfully. If the person from whom he buys it is only a licensee and has no authority to sell, that doesn't necessarily make him a rightful acquirer, does it? But if the person from whom he had purchased it didn't have the authority to sell him, he wouldn't have had the activation codes. Adobe issues the activation codes. And tell me where in the record it says that if you have the activation codes, you therefore have the authority to license or sell. Well, I don't know that it does, Your Honor. So then we're, like, missing some little piece of this puzzle that's pretty critical, right? Plus, the other thing about the burden to prove is you could cut it at various places. In other words, your argument is all he needs to show is that he didn't steal it and that it's real software, essentially, and the burden shifts. With a legitimate activation code issued by Adobe. Right. And another possibility, though, is, I mean, if you ask the question, who has better information about where he got it from, you can look at it either way. I mean, he bought it from somebody. He could ask them where they got it from. That may be at least a good route of starting to go up the chain of title as Adobe coming down in the other direction. It seems to me that, I mean, the one place where I would think your burden to prove certainly stops is as to producing the actual licenses once you get enough information as to what licenses you're looking for because that is in the possession of Adobe. But I don't know that saying that the burden to prove question is necessarily answered by saying you have to do nothing but say I didn't steal it and it's real software. Well, are you disclosed, is this correct, you disclosed the name, the identity of your seller? Yes. And so? And the invoices. And so presumably if the seller had a direct relationship with Adobe, Adobe would have known that or should have known that. Yes. And then Adobe was in a position to see if there was a license agreement. Adobe says it did subpoenas. One missing piece that we're talking about was in the deposition of my client when he was deposed by Adobe and he explains that these were people that he had purchased the Adobe product from for years and that he would sometimes call and they would say we don't have any right now. When it gets closer to the end of the quarter, Adobe's fiscal quarter, they will release a bunch of codes to us and we will have more product that we can sell you. He knew and he understood from his conversations with these people over a number of years that they were acquiring the product directly from Adobe. But Adobe says no, even with that identification, there's no agreement that matches those people in this software. I'm not sure Adobe says no. What Adobe is telling us is that they sent subpoenas and no one responded and they didn't do anything further to follow up on it. But those were not necessarily their direct licensees, right? To whom they were issuing subpoenas. Well, Adobe could have certainly established for the purpose of summary judgment or for the purpose of any of this litigation that the people from the invoices that we had were not people that Adobe dealt directly with. They never established that. They never provided an affidavit from those companies saying we are not authorized to purchase from Adobe. In other words, the information was all provided to them and they did nothing with it to establish that they didn't have a relationship. Let me ask you something. The basic fault that led to the preclusion order was that they didn't produce the licenses or agreements in their initial disclosures. Now, how were they supposed to do that without the information from at the time of the initial disclosures, they presumably, at least the initial initial disclosures, they presumably did not have the information as to who the sellers were. Sooner or later, they did. And something about what kind of software it was. So what should they have produced, I guess, is the question. Well, what was produced to them from us, I can tell you what we gave them and I can tell you what they're complaining about receiving later and dribbling in. What we gave them were all the invoices from the purchase that Mr. Christensen made. What they didn't get until later, because we were litigating with Googleware, which is how these things were purchased online through the Google shopping cart, was where Mr. Christensen sold them. But the information is all, he wouldn't have gotten any different information. The best information was what Mr. Christensen bought. The other information that they got later was just who Mr. Christensen sold it to. So they would have then learned that Nancy Smith in Idaho purchased a copy and they could have called up Nancy Smith, but there was nothing different. They already had all the information on the exact product and the keys. Well, then the question becomes burdensome. Let me ask you, since the defendant is making a defense under the doctrine of for sale, did you subpoena the people from whom the purchases were made to get documentation of any license agreement or the documents under which they would claim title? No. No? No, we didn't. So you didn't come forward with any evidence that showed that you actually had title as opposed to it coming through a licensee. Correct, Your Honor. And so if we were to take your position, it would seem to me that all you'd have to do is literally show possession and where you got it, and then you have established a first-use defense. You need an invoice of possession. No, Your Honor. I don't think that it's – I think there is the matter of my client having communications with these people for a period of years and knowing that they're getting it directly from Adobe based on the context of the conversation, which is what came out in his deposition, and also that he's getting their activation codes that only they release from these parties. Now, could I – So is your contention then that he did establish the chain of title because he established that he bought it from people who bought it from Adobe? Well, not of title but of sale, with that regard to whether it was a title or a license, but he at least demonstrated that he bought it from people who bought it from Adobe, or do you think the evidence establishes that? I don't think that the evidence establishes, and I agree with you, Your Honor, that link from Adobe to those other people, but no one has contended until now that it was an unlawful purchase that my client made. They had all of the information. What Adobe was really saying is that Adobe doesn't sell it, they license it. Well, I mean, they're not saying it's unlawful. What they're saying is, put it in however many words, they're saying you don't have a right to use it under the terms in which you acquired it. Let me get this. Right? I mean, is that what they're saying? Right. That's what they're saying based on this template. And then you say, oh, no, I have the for sale doctrine, right? Right. But the only thing you produce is not to show that the chain of title by which you got it, you just produce invoices that say I bought it. So, in other words, we're still missing, at a minimum, there's a big factual dispute about whether the people from whom you bought it were, in fact, authorized to. Suppose, for example. Let her answer the question. Let her answer the question. Is there still a factual dispute about that? I don't believe there is a factual dispute because if there were a factual dispute, Adobe would have produced that information. Adobe. Well, but whose responsibility is it if it's your first use defense? Because otherwise you basically would abdicate to the gray market in every case because you'd say I have it in my possession and I bought it. And that makes you no different than the guy in the street buying it. From the guy in New York can give you a receipt, the guy in the street can say here's a receipt. I'm selling it to you. So I think that the difficulty comes is that where you've identified that there's a hole in the evidence, you think it's their responsibility and they think it's yours to fill that hole, right? Well, I can tell you what they didn't produce to us was a blank template, and that was how they based their whole, and it's parsing words on their part, that it's not a sale, that it's actually a license agreement, and then they provide as a means of defending these Adobe to the X person and then X to Christensen. They're saying Adobe to X is a license agreement, not a sale. They're not disputing that there's an Adobe to X relationship, and they're not even disputing factually in this case that X. Well, are you saying that it's a sale under that template? Yes, but they can't use. No, no, why is it a sale? What are the terms that tell you it's a sale as opposed to a license? Where would we look to find that? This is where I believe it's their burden. No, I'm just asking. No, I understand. So if you look at that, I mean, do you have any evidence that it's a sale as opposed to? No, no. And they would. Well, Ms. Rasmussen, let me just go a little further into this first sale defense. First of all, you agree generally that the burden of proof on an affirmative defense usually rests with the defendant in the usual case, right? Correct. It would be your burden to produce evidence to establish the elements of that defense. Generally. Usually, usually. Right. But in this case. Things are different. But in this case, you seem to be saying if you make a showing that goes at least, you know, to a certain extent, for instance, that there's evidence that shows that the seller your client was dealing with had a direct relationship with Adobe. If you get that far, then you seem to be saying the burden shifts to Adobe then to show that it was a license and not a sale. Something like that. Is that what you're saying? Yes. But. All right. Now, suppose Adobe fails to establish that, then does that mean you fail to establish your affirmative defense? No, Your Honor. What does it mean? Well, I believe it means that once there has been a lawful purchase and they've established the two factors set forth by this court and other courts, then the burden shifts to them to show that there is infringement. I believe that's what it means. And I believe that the district court was correct in finding that there was. No, but your defense to infringement is first sale. Right? Yes. So don't you have to establish first sale? And to establish first sale, you have to show a sale, which you haven't shown. Because you don't know whether Adobe sold or licensed the software to your supplier. So does that mean you failed in one of the elements of the first sale defense? Well, I can tell you that we didn't know that they alleged it was a license agreement, not a sale agreement, until after the discovery deadline because they didn't produce even that blank redacted template. So they never alleged. And actually, really, when I look back at the pleadings, this is an argument that they've come up with more on appeal than they did in the district court below, that it was a licensing agreement, not a sale agreement. So I'm not sure it's something that we would have even zeroed in or focused in on at the time period when we were in the district court because it's something that they've come up with more recently. Can I ask one last question? Yes. What about this printout of the screenshot of Adobe, which looks a lot like a licensing agreement? What's that doing in the record, and why isn't it at least a proof of a license? The screenshot from my client? It's in the record to show that this is the conditions under which my client was authorized to sell it. I believe that's why it's in the record, if I'm talking about the right screenshot. But if you agree, then, that that is a governing document, then why aren't we just looking at ñ and you agree, I gather, that they could rely on that because the preclusion order specifically said that. Correct. So why aren't we just litigating? Why are we even having this argument? Why aren't we just litigating about the question whether that's a license or a sale? I don't disagree with you, Your Honor. But that's not what the district court did. The district court never got to that question. The district court didn't get to that position because the district court refused to consider the licensing agreement because it wasn't produced. But the preclusion order specifically allowed them to rely on material that you produced, and you produced it. Yes, that's true. I think we have your argument in mind, and we've given you an extra five minutes, actually. Thank you, Your Honor. We'll give Adobe two minutes. Thank you. Thank you, Your Honor. There were a couple of comments that I wanted to focus on, and I'll just address any questions you may have. But in terms of the statements made in 2005, these were sort of inadmissible third-party hearsay statements. There's really no evidence linking either the defendants here or their suppliers to Adobe, which is, as Your Honor has noted, is the essential missing link. Have you said that? Or has someone said that from Adobe? I've looked at this list. They are not in our direct supplier list. We have not licensed any software to these people or entities. Your Honor, the closest I think we can come to that is some of the disclosures that were made in the defendant's business records, and these can be found at ER 288 to 294 and ER 699 to 850, which include some of the disclaimers that were stated that this is OEM software, this is EDU software. And there's really no dispute here that the defendant's sales of that software did not comply with the restrictions attached and that they were therefore in violation of the license agreements. So regardless of the complete chain of title that we're talking about, as I say, there's no argument about the defendant's own distributions being in violation of the license agreements. How were they supposed to know that? Well, they did know that. They said they called up Adobe and said, well, as long as you've got the code, you're good to go. But there is no admissible evidence on that subject. And to the contrary, Mr. Christensen's testimony both on his own behalf and on behalf of the corporation is to the contrary, that he was aware of these restrictions and when pressed on them would disclose them, but did not routinely in the course of his sales. Let's forget the software project. Suppose somebody sold a book to someone else and it turned out that that and then invokes the buyer then sells it and invokes the first sale doctrine when accused of a copyright violation. And he said, and the book publisher's position is that these books were stolen out of its warehouse. Now, who has the burden of proof as to whether the books were stolen out of its warehouse? Your Honor, that back situation is not in front of us, but it does raise a different, no, it's a different sort of situation because in that context, I think there's no argument that the vast bulk of the inventory is in fact sold. And there's a reversal of burden based on a small percentage perhaps having been stolen. However, I think it is fairly clear that the authorities do reverse the burden and place them on the defendants to show that this inventory is not part of the stolen inventory. However, I think that you may get into a situation where it becomes a balance of probabilities or a balance of proof essentially that, you know, 98 percent of the inventory is in fact sold, a small percentage isn't, and therefore it's not sufficient. Here. And you put in evidence that demonstrated that as a legal matter, not as a matter of your deseratum, that these are, that Adobe licenses rather than sells. Your Honor, in this case, there is abundant evidence that the software that the defendant sold is the OEM. So you want them to be licenses, but is there abundant evidence that they're actually licenses? Your Honor, it's the defendant's own admission that it was OEM and educational software. There is no contention that this is full box retail or any other type. What is that proof? I mean, there are different versions of library books, of books too. Well, because unlike the scenario posited by Your Honor, there's essentially an admission here that this is inventory within the scope of the restrictions that are being asserted. There's no admission that it's specialized inventory. There's no admission that it's licensed inventory. No, no, no. But it is admission that it is subject, it is, was distributed pursuant to these licenses, whether the court then characterizes it as a license or sale is obviously. Why is it the fact that it's called academic software different than saying this is, there are editions of books that are published for libraries? That doesn't make them not sold. Your Honor, in fact, I think that there may be books that are licensed rather than sold and that that is, I'm not sure that that issue has been litigated in terms of whether that would pass the first sale defense or not, but it seems to me that the nature of the medium does not necessarily control the analysis that this Court set forth in Verner and which has been applied to the kind of computer software that's at issue in this case. Thank you. Thank you, Your Honor. Thank you, counsel, for your arguments this morning. The case of Adobe v. Christensen is submitted.
judges: Tashima, McKeown, Berzon